EMMA V. PYATT et al., appellants,

v.

JAMES J. LYONS, respondent.

If certain parties agree to sell land to another party, who agrees to take the same and pay a named consideration therefor, upon the delivery to him of a proper deed, and he demands a conveyance of more land than in equity he is entitled to, and refuses to pay the consideration unless his demand is complied with, and after such refusal the land is conveyed to another, who has full knowledge of such demand and refusal—*Held*, that the party making such demand cannot thereafter claim specific performance of the contract, but he will be left to his remedy at law.

On appeal from a decree advised by Vice-Chancellor Bird, reported in *Lyons* v. *Wait, 6 Dick. Ch. Rep. 60.*

*Mr. Woodbury D. Holt* and *Mr. Fergus A. Dennis,* for the appellants.

*Mr. John F. Hageman, Jr.,* for the respondent.

The opinion of the court was delivered by

ABBETT, J.

The bill in this case was filed for specific performance of a contract for the sale of lands. On December 12th, 1891, Mrs. Pyatt and Mrs. Wait, two of the defendants below, believed themselves and were supposed to be the owners in fee of a lot of land located at the corner of Nassau and Witherspoon streets, in Princeton. The lot in question was twenty-two feet six inches in width on Nassau street, with a building thereon, which extended over upon and encroached three feet eleven inches upon Witherspoon street. On that date Mrs. Wait gave to Ollie H. Hubbard, a real estate broker, a memorandum signed by her in the names of Wait and Pyatt. This memorandum is headed " Property of Mrs. Wait and Pyatt for sale or exchange." Under the head of description it says :

Pyatt *v.* Lyons.

"1. Situation, corner Nassau and Witherspoon streets, Princeton, N. J.
2. Size of house and lot, 13 rooms, lot 22½ x 129.   3. Price, $8,500.   Amount
in cash, all.   8. Possession given April 1st, 1892.

The agreement says that on December 12th, 1891—

"I have placed in the hands of and under the control of Ollie H. Hubbard,
of Princeton, New Jersey, for the term of ——— months, the above-described
premises, and for his work in the matter I hereby agree to pay him the sum
of ——— dollars, price aforesaid, the following commissions, viz.: Five per
cent. on the first two thousand dollars, and two and a half per cent. on the
excess thereof.
                                  "Signed,      WAIT and PYATT.
"Signed and sealed in the presence of A. A. Wait."

On February 12th, 1892, Hubbard entered into an agreement
with James J. Lyons, which says—

"An agreement between Ollie H. Hubbard, for Mrs. Emma Pyatt, of New
York city, and Mrs. Mary F. Wait, of Princeton, Mercer county, New Jer-
sey, of the first part, and James J. Lyons, of Princeton aforesaid, of the
second part, witnesseth, that the said Emma Pyatt and Mary F. Wait, for
the consideration of eight thousand five hundred dollars, to be paid as herein-
after mentioned, doth agree with the said James J. Lyons that they will con-
vey, with covenants of general warranty and against encumbrances, to the said
James J. Lyons, his heirs and assigns, on or before the first day of April next
ensuing, all that tract and lot of land and premises situate on the corner of
Nassau and Witherspoon, in Princeton aforesaid, and known as the Henry B.
Duryee property, and numbered 90 Nassau street.

"And the said James J. Lyons, for himself, his heirs, executors and admin-
istrators, doth covenant, promise and agree to and with the said Emma Pyatt
and Mary F. Wait, their heirs and assigns, that he, the said James J. Lyons,
shall and will, on executing the said conveyance, pay or cause to be paid to
the said Emma Pyatt and Mary F. Wait, their heirs or assigns, the said sum
of eight thousand and five hundred dollars, as and for the purchase-money of
the said premises, as follows :

"The sum of five hundred dollars when this agreement is signed, and the
remaining eight thousand dollars when the deed is delivered ; and it is further
agreed that the said James J. Lyons shall have full possession of the said
premises as soon as the said deed had been delivered, subject, nevertheless, to
the conditions and covenants of a certain lease made by and between Emma
V. Pyatt and Mary F. Wait and Rachel and Mary A. Harvey, for one year
at twenty-three dollars per month" &c.   It also states, "and for the due per-
formance of all and singular the covenants and agreements aforesaid, the said
Emma V. Pyatt and Mary F. Wait and James J. Lyons do bind themselves,

their heirs, executors and administrators and assigns, in the sum of five hundred dollars, firmly by these presents, the said sum to be considered as liquidated damages."

The witness clause states that the parties to these presents have interchangeably set their hands and seals thereto the date first above written. It is signed by Ollie H. Hubbard and James J. Lyons, without a seal. There were also two extensions of time on said agreement, for the performance thereof, the first to April 11th, and the second to May 18th. Five hundred dollars were paid Hubbard by Lyons at the date of the execution of the agreement.

The bill in this case alleges the before-mentioned agreement, and then states that on the 1st of April, 1892, part of the building was in the possession of George O. Vanderbilt, guardian of William A. Duryee, the brother of the said Wait and Pyatt, and was being used by him as a hardware store, and for the sale of other goods. It then alleges the extension of the agreement as to the time of performance, and further, that on the 18th day of May, 1892, the defendants, Mr. and Mrs. Pyatt and Mr. and Mrs. Wait, gave the complainant possession of the store, and delivered to him the keys thereof, and assigned to him the lease which they held, mentioned in the contract of sale. The bill then proceeds to set out by description the lot of land mentioned in the agreement of sale, in which he makes it twenty-six feet and five inches wide instead of twenty-two and one-half feet. It further alleges that, on or about the 18th day of May, he discovered a defect in the title to a part of the land. He then proceeded to allege a defect in the title as to the three feet and eleven inches in excess of the twenty-two and one-half feet, and he claims a depth of one hundred and thirty feet and eight inches instead of one hundred and twenty-nine feet. The bill then alleges that upon discovering this defective title he informed Mrs. Pyatt and Mrs. Wait and their respective husbands of the same, and insisted that they should take proper steps to have the defect in the title of the said strip of land removed, and that he could not accept the deed for the said land, or any part thereof, and pay the balance of the purchase-money until it was dis-

charged of every encumbrance or defect. The bill then alleges that, on the 23d of May, 1892, Mrs. Pyatt and Mrs. Wait, by Fergus A. Dennis, their attorney, and Ollie H. Hubbard, tendered a deed of conveyance to him, in and by which they sought to convey to him all the land, tenements and buildings, excepting the said strip three feet and eleven inches wide and one hundred and thirty feet. and eleven inches deep, and that this strip of land, which is the " narrow strip," the title of which is defective, was not included in the conveyance tendered, and the bill says " this deed your orator refused to accept, as it did not convey the amount sold by agreement to your orator." The bill also alleges that the dwelling, store and building stand partly upon this narrow strip of land, and are built up to the western side of Witherspoon street, so that if said strip of land should be lawfully seized by persons other than the defendants, the buildings purchased as aforesaid by the complainant would be accordingly injured and almost destroyed. He then alleges that he frequently applied to Mrs. Pyatt and Mrs. Wait, and urged them to make a good title to said strip of land, and offered to assist them in doing so, and that at times pretended to be doing all in their power to perfect said title to said narrow strip; that they finally ceased their efforts and failed to do what would have enabled them to convey the entire tract, including this strip. It further alleges that he frequently demanded a conveyance from Mrs. Pyatt and Mrs. Wait and their respective husbands, and from their attorney and agent, assuring them that he was willing to perform his part of the agreement and have a good and sufficient conveyance of the said land and premises in fee simple made to him, discharged of all encumbrances, and to pay the residue of said purchase-money. The bill then alleges the conveyance to George O. Vanderbilt on October 3d, 1892, for the sum of $9,000, conveying a part of the land claimed by the complainant, to wit, twenty-two feet and six inches on Nassau street; that he has asked Vanderbilt to convey the same; that he had knowledge of all the facts, and that he is chargeable in equity with such knowledge as to entitle complainant to a decree

against him, to make him a conveyance of the premises he took by his deed from the defendants.

The affidavit of the complainant, annexed to the bill, says:

" On the twenty-third day of May Fergus A. Dennis and Ollie H. Hubbard tendered me a deed for the strip of land, which is twenty-two feet and six inches fronting on Nassau street, and one hundred and thirty feet deep, which deed did not include the strip three feet and eleven inches on the Witherspoon street side. I refused to accept this deed. About this time I discovered that there was *a cloud upon the title to the narrow strip* fronting three feet and eleven inches and bounded on the east by Witherspoon street, and told the defend- ants and their attorneys, that it *must be removed before I would accept the deed.* * * * I am now *ready to pay the balance of the purchase-money* as soon as the *deed* for the entire tract fronting *twenty-six feet and five inches* on Nassau street is delivered to me with *all clouds removed* from the title of *any part of said land.*"

The evidence shows that a deed dated March 28th, 1892, was tendered the complainant on May 23d, 1892, and that he refused to accept the same and pay the balance of the consideration money, because the grantor did not have title to this narrow strip of land in question, which was within the lines of Wither- spoon street.

Several months were spent in endeavoring to get the borough authorities to give a quit-claim deed for this " narrow strip," but they failed on account of the objections of the mayor of the borough. In this effort both complainant and defendants, or some of them, united. When this effort had failed the defendants again, in the latter part of September, offered to deliver the deed and de- manded the balance of the purchase-money. Lyons refused to take any deed and pay the balance of the purchase-money unless such deed embraced all the property he claimed under the agree- ment, which was twenty-six feet eleven inches in width on Nassau street. He was at this time told by one of the defendants that they could not give any other deed than the one already tendered. After this second refusal on the part of Lyons to take a deed unless it embraced the narrow strip described in the bill, the de- fendants, October 4th, executed and acknowledged a deed, con- veying to the defendant Vanderbilt the same property described in the deed tendered to Lyons and which he had refused to accept.

The bill, affidavit and evidence clearly show that the position taken by complainant, both in his suit and prior thereto, was that he was entitled to a deed, not only for the premises described in the deed tendered to him May 23d, 1892, and afterwards again offered to him in September, but also to this "narrow strip" of three feet eleven inches, within the lines of Witherspoon street, and that so believing he refused to pay the balance of the purchase-money he had agreed to pay, unless he got a deed with covenants of general warranty and against encumbrances, which would give him a good title to twenty-six feet eleven inches, a part of which (three feet eleven inches) was within the lines of Witherspoon street.

The defendants could not give title to this "narrow strip" to either complainant or Vanderbilt, but after the sale to Vanderbilt they or one of them offered to complainant the $500 he had paid Hubbard on account of the purchase-money, and also $500 for the liquidated damages named in the contract.

There are serious questions presented in this case which affect the right of complainant to the relief prayed for in his bill, but we do not deem it necessary to discuss or express an opinion upon any of them, except the one upon which we shall decide this case.

In this case, if the contract is to be enforced, the complainant was entitled, in equity, to a conveyance of a lot on the corner of Nassau and Witherspoon streets, in Princeton, twenty-two feet six inches wide and one hundred and twenty-nine feet deep, and he was not entitled, in equity, to the "narrow strip" of three feet eleven inches, which was part of Witherspoon street.

The learned vice-chancellor reached this conclusion, and determined correctly upon the evidence in this case, that this complainant never had any right, in equity, to have a conveyance of a lot of more than the twenty-two feet six inches in width. The defendants offered to convey such a lot, and twice, once in May and again in September, 1892, tendered the deed of March 28th, 1892, containing a proper description of a lot twenty-two feet six inches wide by one hundred and twenty-nine feet deep, on the corner of Nassau and Witherspoon streets. The complain-

ant refused to take any deed unless it gave him a lot twenty-six feet five inches in width, and refused to pay the balance of the purchase-money unless he got a good title to such a lot as would include the "narrow strip" of land in Witherspoon street.

The relief invoked is not a matter *ex debito justitiæ;* the bill for specific performance is addressed to the extraordinary jurisdiction of a court of equity to be exercised according to its discretion, and he who seeks performance of a contract for the conveyance of land must show himself ready, desirous, prompt and eager to perform the contract on his part. *Meidling* v. *Trefz, 3 Dick. Ch. Rep. 644; Page* v. *Martin, 1 Dick. Ch. Rep. 589; Blake* v. *Flatley, 17 Stew. Eq. 231.*

The complainant has not presented a case which brings him within the above rules, and no case has been shown where a court of equity decreed specific performance after such a refusal as complainant admits in this case. He refused to perform the contract on his part, unless the defendants would do what in equity they were not bound to do.

The complainant cannot, after such a refusal, and after the defendants have sold the premises to another, seek in a court of equity the relief prayed for in this suit. He must be left to his remedy at law.

The decree below should be reversed, with costs.

*For reversal*—THE CHIEF-JUSTICE, ABBETT, DEPUE, DIXON, REED, VAN SYCKEL, BROWN, CLEMENT, KRUEGER, SMITH —10.

*For affirmance*—None.